CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 28 2017

JULIA C DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PREMO AUTOBODY, INC., et al., | ) |
| Plaintiffs, | ) Civil Action No. 3:17CV00001 |
| v. | ) **MEMORANDUM OPINION** |
| C. WAVERLY PARKER, et al., | ) Hon. Glen E. Conrad |
| Defendants. | ) Chief United States District Judge |

Plaintiffs George A. Mayo, Marie L. Mayo, and Premo Autobody, Inc. brought the instant action against defendants C. Waverly Parker, Michael Parker, the Sheriff for the City of Charlottesville, and the United States of America. The case was originally filed in the Circuit Court for the City of Charlottesville, Virginia, and the United States timely removed the matter to this court. The plaintiffs seek declaratory relief in relation to a sale of certain property and assert a cause of action for trespassing against certain defendants. The matter is currently before the court on the Parkers' motions for summary judgment as to Counts I and II, severance and remand of Count III, and to vacate the court's order granting plaintiffs leave to amend their complaint. The Sheriff has also moved to dismiss the complaint against him. For the reasons stated, the motions for summary judgment and to dismiss will be granted. All other motions will be denied.

### Background

Premo Autobody, Inc. ("Premo") is a Virginia Corporation which formerly maintained its offices in Charlottesville, Virginia. Am. Compl. ¶ 2. Currently, it is not actively engaged in business, but its principal officer and registered agent is George Mayo, a resident of Charlottesville. Id. Marie Mayo is George Mayo's spouse (collectively, the "Mayos").

The United States holds a secured claim against Premo in the amount of approximately $119,377.31 by virtue of ten Notices of Federal Tax Lien ("NFTL") filed prior to November 15, 2011. Id. ¶ 9. On December 15, 2015, defendants C. Waverly and Michael Parker (collectively, the "Parkers") obtained a judgment against Premo in the amount of $49,301 (the "Parker Judgment"). See Final Order, Parker v. Premo, No. 540CL15000379 (Va. Cir. Ct. Dec. 18, 2015), Docket No. 41-2. On February 11, 2016, the Circuit Court for the City of Charlottesville issued a writ of fieri facias in execution of the Parker Judgment. See Writ of Fieri Facias, Docket No. 41-3.

On February 17, 2016, the Sheriff of the City of Charlottesville, James Brown ("Sheriff Brown"), began to levy the fieri facias on the personal property of Premo. See Sheriff's Return on Writ of Fieri Facias, Docket No. 41-4. The Sheriff subsequently served the plaintiffs with notice of the pending sale of the property. Notice of Sheriff's Sale, Docket No. 41-8. Sheriff Brown sold the property at public auctions on November 30, 2016, January 4, 2017, and January 11, 2017. See Bill of Sale, Docket No. 41-10. The Parkers purchased the property, and the Sheriff distributed the proceeds to the Parkers in partial satisfaction of the Parker Judgment. See id.; Aff. of C. Waverly Parker ¶ 17, Docket No. 41-1. Id. A piece of the property sold was a paint booth, which the Mayos assert was a fixture, attached to real estate owned by the Mayos and rented to Premo. Id.; Am. Compl. ¶ 32. Therefore, the Mayos contend that, as a fixture to their real property, they owned the paint booth and that it was not subject to levy.

Plaintiffs filed the instant action in the Circuit Court for the City of Charlottesville, Virginia, and the United States timely removed. In Count I of their amended and original complaints, plaintiffs seek a declaration that the United States is entitled to the priority in payment of all proceeds from the sale of any Premo property. Count II, labeled "interpleader,"

seeks a declaration that the United States is entitled to any proceeds of the November Sale and any proceeds from subsequent sales of Premo property. Plaintiffs also seek to enjoin the Sheriff from any distribution of such proceeds while the instant action is pending. Count III of the original complaint included an action for trespass against the Parkers and Sheriff Brown. However, on February 24, 2017, the plaintiffs moved for leave to amend their complaint to add the United States as a defendant to Count III, and to include a request for a declaration that the paint booth belonged to the Mayos at the time of the levy and sale. The United States did not object to amending the complaint. The court granted the plaintiffs leave to amend, and the amended complaint was deemed filed on March 2, 2017.

The United States has also filed a crossclaim against the Parkers, seeking an order of foreclosure on the federal tax liens. Sheriff Brown also filed a crossclaim against the Parkers, asserting that the Parkers are liable to Sheriff Brown, pursuant to Virginia Code § 8.01-367, for all claims asserted against him. On April 12, 2017, the court held a hearing on various motions. The matters have been fully briefed and are ripe for review.

## Discussion

### I. Sheriff Brown's Motion to Dismiss

In his amended answer, Sheriff Brown asserts a "Plea in Bar." "Pleas in bar have been abolished by the Federal Rules of Civil Procedure. . . . Nevertheless, it is proper to treat the defendant['s] pleadings as a motion to dismiss for failure to state a claim." Givens v. O'Quinn, No. 2:02CV00214, 2006 WL 399638, at *1 (W.D. Va. Feb. 20, 2006). Virginia Code § 8.01-367 provides that an officer, when levying a fieri facias, may require that the creditor seeking the levy provide an indemnifying bond. This bond serves to indemnify the officer against "all

3

damage which he may sustain in consequence of the seizure or sale of such property and to pay to any claimant of such property all damage which he may sustain in consequence of such seizure or sale." Va. Code § 8.01-367. At the hearing, plaintiffs conceded that Sheriff Brown received such an indemnifying bond from the Parkers. Plaintiffs then stipulated to the dismissal of Sheriff Brown, to which no party objected. Accordingly, Sheriff Brown will be dismissed from this action.

## II. Parkers' Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's evidence to raise a genuine issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When deciding whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. Id. at 255; see also Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). Here, the Parkers have moved for summary judgment as to Counts I and II.

### A. Count I

Count I seeks a declaration that all proceeds from the sale of Premo property belong to the United States. Virginia law provides that when a piece of property subject to a writ of fieri facias is sold, the proceeds are used to satisfy the fieri facias and the surplus, if any, is repaid to the debtor. Va. Code § 8.01-495. However, if the property at issue is subject to a prior, senior security interest, it may nevertheless be levied upon for the satisfaction of a junior fieri facias.

4

See Va. Code. § 8.01-480. When property subject to a senior interest is levied to satisfy a junior lien, one of two outcomes will result: (1) the property will be sold free and clear of the senior interest; or (2) the senior interest will remain attached to the property despite the sale.

If the senior security interest is due and payable prior to the sale, the officer executing the fieri facias "may sell the property free of such [senior] security interest . . . ." Id. (emphasis added). Whether the property is sold subject to the senior lien or free and clear of it remains the discretion of the levying officer. Id. In the event that the officer intends to sell the property free and clear of the senior interest, the officer must first provide the senior lien holder sufficient notice. After the sale, the officer applies the proceeds "first to the payment of such security interest, and the residue, so far as necessary, to the satisfaction of the fieri facias." Id. Alternatively, if the Sheriff does not notify the senior secured party, and the Sheriff announces that the sale will be made subject to the senior security interests, the senior interest remains attached to the property despite the sale. The proceeds are used to satisfy the fieri facias, are not repaid to the debtor absent a surplus, and are not used to satisfy the senior security interest. Id.

Here, because the United States filed the NFTL in 2011, several years before the Parker Judgment arose, the United States holds a superior interest in the levied property. Prior to the sale, the Sheriff explicitly stated that "[a]ll items are sold subject to any and all liens." See Terms of the Sheriff's Sale, Jan. 4, 2016, Docket No. 41-10. Moreover, the United States avers that it did not receive notice of the sale. See Mot. to Intervene 5, Docket No. 41-12. Because the United States did not receive notice and Sheriff Brown specifically sold the property subject to any and all liens, under Virginia law, the Premo property sold to the Parkers remains subject to the federal tax liens. The proceeds from the sale are to be used to satisfy the fieri facias, with any

5

surplus repaid to the debtor. Therefore, under Virginia law, the United States has no interest in the proceeds from the sale as the federal tax liens remain intact.

The same result occurs when the court looks to federal law. The Internal Revenue Code provides that when the United States has a claim or lien on a piece of property and the property is subject to a nonjudicial sale, the federal lien remains attached to the property absent statutorily-prescribed notice to the United States. See I.R.C. § 7425(b); A.H. and R.S. Coal Corp. v. United States, 461 F. Supp. 752, 755 (W.D. Pa. 1978) ("Under s 7425(b) a non-judicial sale divests property of a federal tax lien only if: (1) The United States failed to file the record notice of the lien 30 days before the sale; or (2) the United States consents that the sale discharges the lien; or (3) the creditor complies with notice provisions prescribed by section 7425(c) and the regulations promulgated thereunder."). Even if the United States is on notice of the sale, it must consent that the property will be sold free and clear of its liens. See I.R.C. § 7425(c)(2); Southern Bank of Lauderdale Cty. v. IRS, 770 F.2d 1001, 1002 n.3 (11th Cir. 1985) (noting that the statute requires the United States to consent to discharge of the tax liens when the property is sold at a nonjudicial sale). In the instant case, the United States did not receive notice of the Sheriff's sale and did not consent. See Motion to Intervene 5, Docket No. 41-12. Consequently, under federal law, the tax liens remain on the property.

Finally, it appears to the court that all parties agree that the property at issue remains subject to the tax liens and that the United States does not have an interest in the proceeds. In its brief, the United States concedes that it no longer asserts a claim to the proceeds. Def.'s Br. in Resp. 1, Docket No. 46. Instead, the United States reaffirms its contention that it holds a senior secured interest in the Premo property. Id. Similarly, the plaintiffs assert that they "agree with [the United States'] analysis and state that such result is further mandated by the failure of the

6

Sheriff to properly conduct a sale of property free and clear of liens as mandated by the Virginia Code §8.01-480." Pls.' Br. in Opp'n 4, Docket No. 47. The court therefore finds that both Virginia and federal law mandate the same conclusions be reached: that the proceeds from the sale were properly distributed to the Parkers; that the United States has no interest in the proceeds from the sale; and that the federal tax liens remain on the Premo property. The court will therefore dismiss Count I, as it seeks a declaration that the United States has an interest in such proceeds.

### B. Count II

While styled as an "interpleader," Count II seeks a seeks a declaration that the United States is entitled to any proceeds of the November 30, 2016 Sheriff's sale and any proceeds from subsequent sales of Premo property. Plaintiffs also seek to enjoin the Sheriff from any distribution of such proceeds while the instant action is pending. As an initial matter, to the extent Count II seeks the same declaration sought in Count I, and not interpleader, the court has already addressed the merits of that claim.

"The true bill of interpleader historically is an action in which the plaintiff is a disinterested stakeholder who requests the court to determine which of two or more adverse claimants is rightfully entitled to the fund or property possessed by the plaintiff." See MFA Mut. Ins. Co. v. Lusby, 295 F. Supp. 660, 663 (W.D. Va. 1969). "Under Rule 22 of the Federal Rules of Civil Procedure, as well as the analogous interpleader provisions in the Code of Virginia, § 8.01-364, such a person who may be exposed to multiple claims by others to the same fund held by it, may require those other parties to be joined in an interpleader action." NationsBank, N.A. v. Raney, No. 98-0018, 1998 WL 713803, at *4 (W.D. Va. Oct. 1, 1998). From the plain language of the Virginia statute, interpleader is appropriate when a party holds funds subject to

competing claims. See Va. Code § 8.01-364 ("Whenever any person is or may be exposed to multiple liability through the existence of claims by others to the same property or fund <u>held by him or on his behalf</u> . . . .") (emphasis added). Furthermore, "a claimant not in possession or control of property cannot bring the action and thus force the stakeholder to interplead." Bankers Trust Co. v. Mfrs. Nat. Bank, 139 F.R.D. 302, 307 (S.D.N.Y. 1991) (quoting 3A James Wm. Moore et al., Moore's Federal Practice ¶ 22.07 (1991)).

In the instant case, the plaintiffs hold no such funds as the Sheriff has already distributed them to the Parkers. As such, the plaintiffs cannot force others to interplead, especially when there is no dispute as to who has a right to the proceeds. As the court has already discussed, there is no dispute as to the proceeds from the sale; there is simply a senior federal tax lien attached to the property. Thus, the court believes that interpleader is inappropriate in the instant action.

Plaintiffs also ask the court to enjoin Sheriff Brown from distributing the proceeds from the sale. The Parkers have presented evidence that the proceeds have already been distributed. See Aff. of C. Waverly Parker ¶ 17, Docket No. 41-1. The plaintiffs have failed to produce any evidence in rebuttal. Consequently, the court accepts as true that the proceeds have already been distributed. See Fed. R. Civ. P. 56(e)(2). Therefore, to the extent that plaintiffs seek to enjoin the occurrence of past events, the court finds the claim moot. See, e.g., Burgess v. Butz, 423 F. Supp. 27, 29 (S.D.W. Va. 1976) (noting that the Court could not fashion an injunction to compel compliance with conduct which had already occurred); Ry. Labor Execs. Ass'n v. Chesapeake Western Ry., 915 F.2d 116, 119 (4th Cir. 1990) ("An appeal of the denial of an injunction to prohibit an act is rendered moot by the happening of the act."). Consequently, the court will dismiss Count II.

### III. Motion to Sever and Remand Count III

The Parkers ask the court to sever and remand Count III. In the original complaint, Count III sought judgment against the Parkers and Sheriff Brown for trespassing. The Parkers assert that the court would not have jurisdiction over this claim because it arises wholly under Virginia-law between Virginia citizens for an amount less than $75,000 and has no factual connection to Counts I and II. See 28 U.S.C. § 1332 (listing the requirements for diversity of citizenship jurisdiction; 28 U.S.C. § 1441(c)(1)(B) (stating that upon removal of an action arising under federal law, the district court shall sever from the action all claims not within the original or supplemental jurisdiction of the district court). Furthermore, the Parkers assert that the court must evaluate whether it possesses the ability to adjudicate Count III from the time of the removal petition, not after the subsequent amended complaint that added a federal defendant. See Caterpillar Inc. v. Lewis, 519 U.S. 61, 73 (1996) (stating that removal pursuant to 28 U.S.C. § 1441(a) requires a case to "be fit for federal adjudication at the time the removal petition is filed").

Had the United States not been a party to the instant action, § 1441, governing removal of a civil action based on diversity of citizenship or federal question jurisdiction, would have been the only basis upon which a defendant could remove the case to federal court. In that instance, it is not clear that the court would have had original jurisdiction over any of the claims, likely rendering the case unfit for removal. See 28 U.S.C. § 1441(a) (providing for removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction"). In this case, however, the United States, as a party to the litigation, removed pursuant to § 1444, and also asserted that removal was proper under § 1442. Section 1444

provides that any action affecting property upon which the United States has a lien may be removed to federal court; section 1442 allows removal when a civil action is brought against the United States. 28 U.S.C. § 1442 ("A civil action . . . that is commenced in a State court and that is against or directed to [the United States for or relating to the collection of revenue] may be removed by them to the [federal] district court . . . ."). Therefore, the court may exercise jurisdiction pursuant to §§ 1444 and 1442 rather than § 1441.

The purpose of § 1442 is to provide a federal forum for the United States and officers of the United States. Therefore, the grant of federal jurisdiction under § 1442, in contrast to removal jurisdiction under § 1441, should be read broadly. See Tolley v. Monsanto Co., 591 F. Supp. 2d 837, 849 (S.D. W. Va. 2008) ("[Section] 1442 should be construed broadly enough to provide a federal forum for federal officers and the litigation of federal defenses."); Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006) ("Because it's so important to the federal government to protect [its interests], removal rights under section 1442 are much broader than those under section 1441."). Indeed, "Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency." 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Removal from State Courts § 3726 (4th Ed. 2017). "[I]f one claim cognizable under § 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims." Nat. Audubon Soc. v. Dep't of Water & Power, 496 F. Supp. 499, 509 (E.D. Cal. 1980). In sum, § 1442 creates a "species of statutorily-mandated supplemental subject-matter jurisdiction." Wright & Miller, Federal Practice and Procedure § 3726. "The district court can exercise its discretion to decline jurisdiction over the supplemental claims . . . ." Id.

When faced with a motion to remand a case removed pursuant to § 1442, the court considers principles of comity, federalism, judicial economy, and fairness to litigants. See id.; see also Bank of New York Mellon Trust Co. v. Phipps, L-10-1271, 2011 WL 1322393, at *3 (D. Md. Apr. 1, 2011) (remanding the case, which was previously removed pursuant to § 1444, when only state-law claims and state defendants remained out of the "interests of comity"). In the instant matter, the United States claims an interest in all of Premo's property and seeks to foreclose on that interest. Consequently, it must be determined what property belonged to Premo and remains subject to the federal tax liens. This inquiry will address whether Premo or the Mayos owned the paint booth. The trespass claim also implicates ownership of the paint booth. See, e.g., Sangster v. Commonwealth, 58 Va. 124, 129-30 (1866) ("A sheriff who takes the property of A under an attachment against the property of B, thereby . . . commits a trespass.").

At this stage of the litigation, the court believes it would be unfair to the litigants, contrary to § 1442's purpose of providing a federal forum to the federal government, and an inefficient use of judicial resources to remand Count III. If the court were to do so, plaintiffs would be forced to simultaneously litigate the same issue in both venues: in state court with the trespassing claim and in federal court because of the United States' crossclaim seeking to foreclose on the property subject to the tax liens. It would be unfair to subject them to two jurisdictions and two courses of discovery on this identical issue. Therefore, to the extent that Count III requires a determination of whether the paint booth was ever subject to a tax lien, the court will retain jurisdiction.

Nevertheless, whether Virginia law precludes the Mayos from asserting a present claim of title, a trespass claim, or both are issues of state law. The court believes that the proper course of action is to first rule on whether the United States has any interest in the paint booth and to

subsequently resolve the foreclosure rights asserted in the United States' crossclaim. Upon resolution of the United States' claims, the only remaining issues will be the Mayos' present interest in the paint booth and the Mayos' state-law trespass allegations. At that point in time, upon a motion from either party, the court will further entertain the possibility of remand. See Carter v. Cent. Reg'l West Virginia Airport Auth., No. 2:15CV13155, 2016 WL 4005932, at *6 (S.D.W. Va. July 25, 2016) ("'[Where] removal is proper but the federal officer is dismissed, the court, in its discretion, may retain jurisdiction over claims against the remaining defendants.' . . . There is no good reason to keep [an otherwise non-removable claim] in federal court because an officer of the United States had a connection to it at an earlier time."). However, for the reasons stated, the court will deny the instant motion.

### IV. Motion to Vacate

The Parkers request that the court vacate its order granting plaintiffs leave to amend their complaint. The Parkers argue that, absent the amendment, the court would not have jurisdiction over Count III. As discussed above, the court disagrees and believes it may properly exert jurisdiction over the entire case. Moreover, under Rule 15(a) of the Federal Rules of Civil Procedure, the court should "freely give leave when justice so requires." In the Fourth Circuit, a district court may deny leave to amend only when such leave would cause undue prejudice to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999). The Parkers have made no such argument that would have prevented the court from granting leave to amend. Accordingly, the court will deny the Parkers' motion to vacate.

## Conclusion

For the foregoing reasons, the Parkers' motion for summary judgment will be granted, the Parkers' motion to sever and remand will be denied, and the Parkers' motion to vacate will be denied. The Sheriff's motion to dismiss will be granted. The remaining issues are what interest, if any, the United States has in the paint booth, and the United States' claims seeking foreclosure on the federal tax liens. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 28th day of April, 2017.

_____
Chief United States District Judge