IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PREMO AUTOBODY, INC., GEORGE A. MAYO, JR., and MARIE L. MAYO, <br><br> Plaintiffs, <br><br> v. <br><br> C. WAVERLY PARKER, MICHAEL A. PARKER, and UNITED STATES OF AMERICA, <br><br> Defendants. <br><br> UNITED STATES OF AMERICA, <br><br> Cross-Claimant, <br><br> v. <br><br> C. WAVERLY PARKER, MICHAEL A. PARKER, GEORGE A. MAYO, JR., MARIE L. MAYO, PREMO AUTOBODY, INC., COMMONWEALTH OF VIRGINIA, DEPT. OF TAXATION, and VIRGINIA NATIONAL BANK, <br><br> Cross-Defendants. | Civil Action No. 3:17CV0001 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Senior United States District Judge |

The United States of America ("United States") has moved for summary judgment on its amended cross-claim seeking to foreclose on certain federal tax liens encumbering personal property in the possession of C. Waverly Parker and Michael A. Parker. For the following reasons, the court finds that there is no genuine dispute of material fact and that the United States is entitled to judgment as a matter of law. Accordingly, the court will grant the motion for summary judgment and permit the sale of the personal property at issue.

## Background

### I. The Personal Property at Issue

On December 18, 2015, C. Waverly Parker and Michael A. Parker (collectively, "the Parkers") obtained a judgment against Premo Autobody, Inc. ("Premo") and others in the amount of $49,301.00 in the Circuit Court for the City of Charlottesville. On February 11, 2016, the Circuit Court issued a writ of fieri facias in execution of the judgment. The Sheriff of the City of Charlottesville began to levy the writ of fieri facias on the personal property of Premo on February 17, 2016.

The personal property seized from Premo was sold at public auctions conducted on November 30, 2016, January 4, 2017, and January 11, 2017. The Parkers purchased "all or substantially all of the property" sold at the auctions, and they remain in possession of such property. Am. Cross-cl. ¶¶ 40–42, Dkt. No. 83; see also Parkers' Answer to Am. Cross-Cl. ¶¶ 40–42, Dkt. No. 90 (admitting the allegations in paragraphs 40–42 of the cross-claim). The personal property sold to the Parkers at the auctions is the property at issue in this case (hereinafter referred to as "the Personal Property").

### II. Virginia National Bank's Security Interest

On July 20, 2005 and periodically thereafter, Premo obtained a series of commercial loans from Virginia National Bank ("Virginia National"). In exchange for the commercial loans, Premo granted the bank a security interest in Premo's assets, including "all accounts receivable, inventory, machinary [sic], equipment, and furniture and general intangibles." Am. Cross-Cl. Ex. B, Dkt No. 83-1. On July 22, 2005, Virginia National filed a financing statement against Premo with the Virginia State Corporation Commission ("SCC"). Pursuant to Virginia Code § 8.9A-515, Virginia National filed a financing continuation statement on June 24, 2010 regarding the initial financing

statement. Virginia National filed a second continuation Statement on July 20, 2015 regarding the initial financing statement.

Premo has not fulfilled its loan repayment obligations. As of June 4, 2018, the outstanding balance owed to Virginia National, including principal, interest, and late fees, is $158,443.56.

### III. The United States' Federal Tax Liens

Premo failed to pay certain federal taxes assessed in 2009, 2010, and 2011. On the date of the assessments, federal tax liens in favor of the United States arose by operation of law, pursuant to 26 U.S.C. §§ 6321 and 6322. The United States filed notices of each of the federal tax liens with the Clerk of the SCC, pursuant to Virginia Code § 55-142.1. As of September 3, 2018, Premo's outstanding federal tax obligations total $199,355.85.

### IV. Other Defendants to the Amended Cross-Claim

The United States also named the Commonwealth of Virginia, Premo, George Mayo, and Marie Mayo as cross-claim defendants. The record reveals that the Virginia Department of Taxation and the Virginia Employment Commission previously recorded memoranda of liens against Premo for unpaid taxes in the Office of the Clerk of the Circuit Court for the City of Charlottesville. It is undisputed, however, that the Commonwealth has not taken the steps necessary to obtain a perfected lien against the Personal Property at issue. See Stipulation ¶ 3, Dkt. 101 ("The Commonwealth of Virginia's liens, as described above, have not been perfected as to the Personal Property.").[1]

---

[1] Under Virginia law, a memorandum of lien for collection of taxes has "the effect of a judgment in favor of the Commonwealth, to be enforced as provided in Article 19 of Chapter 3 of Title 8.01 [of the Code of Virginia], except that a writ of fieri facias may issue at any time after the memorandum is filed." Va. Code § 58.1-1805. The issuance of a writ of fieri facias is required to create a lien on the personal property of a judgment debtor. See Va. Code §§ 8.01-478, 8.01-501; see also In re ARC Energy Corp., 122 F.3d 1010, 1997 U.S. App. LEXIS 24933, at *10 (4th Cir. 1997) (unpublished table opinion) ("The cases cited by Wallace fail to contradict the fact that, under Virginia law, Wallace did not obtain a perfected lien against Colstar's personal property because it did not file the requisite writ of fieri facias.") (emphasis omitted).

George Mayo served as Premo's principal officer and registered agent. Marie Mayo is George Mayo's spouse (collectively, the "Mayos"). It is undisputed that neither Premo nor the Mayos have any remaining ownership interest in the Personal Property.[2]

## Procedural History

On January 3, 2017, Premo and the Mayos filed the instant action in the Circuit Court for the City of Charlottesville. The United States removed the action to this court on January 11, 2017. Upon removal, the United States filed a cross-claim against the Parkers seeking to foreclose on the federal tax liens. The cross-claim was later amended to include Virginia National, the Commonwealth of Virginia, Premo, and the Mayos as cross-claim defendants. The amended cross-claim is the only claim that remains pending before the court.

On August 24, 2018, the United States filed a motion for summary judgment. The Parkers filed the sole response to the motion on September 7, 2018. The motion is now ripe for disposition.[3]

## Standard of Review

Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether to grant a summary judgment motion, the court must "view[] the facts and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Woollard v. Gallagher, 712 F.3d 865, 873 (4th Cir. 2013).

---

[2] The Personal Property includes a paint booth. The Mayos initially maintained that the paint booth was a fixture attached to real property that they owned and rented to Premo. However, the Mayos have since "admit[ted] allegations establishing Premo's ownership of the paint booth" at the time it was sold by the Sheriff to the Parkers. October 12, 2017 Order 1, Dkt. No. 81.

[3] The court has determined that oral argument would not aid the decisional process at this time.

4

## Discussion

### I. Jurisdiction

The United States filed its amended cross-claim at the request of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and at the direction of the Attorney General, in accordance with 26 U.S.C. §§ 7401 and 7403. The court has jurisdiction under 26 U.S.C. § 7402 and 28 U.S.C. §§ 1331, 1340, and 1345. "All persons having liens upon or claiming any interest in" the Personal Property have been joined as parties pursuant to 26 U.S.C. § 7403(b).

### II. Validity of the Federal Tax Liens

The Internal Revenue Code provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Such lien "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." Id. § 6322. "Time lapses when the period for collection of the lien runs under [26 U.S.C.] § 6502(a)." In re Cole, 205 B.R. 668, 672 (Bank. D. Mass. 1997). Thus, the tax lien expires "10 years after the assessment of the tax," unless "a timely proceeding in court for the collection of [the] tax is commenced" to extend the collection period. 26 U.S.C. § 6502(a). "The transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere." United States v. Bess, 357 U.S. 51, 57 (1958) (internal quotation marks omitted).

In this case, it is undisputed that Premo failed to pay federal taxes assessed in 2009, 2010, and 2011. As a result, federal tax liens in favor of the United States arose at the time the assessments were made and attached to all property then owned by Premo, including the Personal

5

Property at issue. See 26 U.S.C. §§ 6321–6322. It is also undisputed that the assessed amounts have not been satisfied and that the liens have not become unenforceable due to a lapse of time. Id. § 6322. Consequently, the United States has valid tax liens on the Personal Property, and it is entitled to enforce the liens under 26 U.S.C. § 7403. See 26 U.S.C. § 7403(a) ("In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title or interest, to the payment of such tax or liability.").

### III. Priority of Claims

Section 7403(c) requires the court to determine the priority of competing liens or claims upon the Personal Property. See id. § 7403(c). "The priority of a federal tax lien is governed by federal law." In re Restivo Auto Body, Inc., 772 F.3d 168, 172 (4th Cir. 2014). Under federal law, a tax lien arises at the time the tax assessment is made, 26 U.S.C. § 6322, and "generally takes priority over a lien created after that date under the common-law principle that 'the first in time is the first in right,'" In re Restivo Auto Body, 772 F.3d at 172–73 (emphasis added) (quoting United States v. City of New Britain, 347 U.S. 81, 85 (1954)). However, a tax lien is not "valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor" until a notice of federal tax lien has been filed. 26 U.S.C. § 6323(a).

Applying these legal principles, the court agrees with the parties that Virginia National's claim to the Personal Property at issue is superior to all other claims, including the federal tax liens. Virginia National was the first to perfect its claim against the Personal Property by properly filing a financing statement with the SCC on July 22, 2005. See Va. Code § 8.9A-515. Since that time, the

bank has maintained its perfected security interest by filing necessary continuation statements. Id. Because Virginia National was the first to perfect its claim to the Personal Property, the court concludes that the bank has priority under the first-in-time rule. It is undisputed that the amount of Virginia National's claim, as of June 4, 2018, is $158,443.56.

The court agrees with the parties that the United States' claim to the Personal Property at issue is second in priority, because the United States was the next party to perfect its interest. It is undisputed that the United States properly perfected its tax liens by filing notices of federal tax liens with the SCC. See 26 U.S.C. § 6323(a); Va. Code § 55-142.1. The notices were filed on or between May 4, 2009 and November 14, 2011. Pursuant to 26 U.S.C. § 6323(a), the federal tax liens have priority over any liens or other interests that arose thereafter. It is undisputed that the amount of the United States' claim, as of September 3, 2018, is $199,355.85.

As noted above, the Parkers purchased the Personal Property at the public auctions held in November of 2016 and January of 2017. It is undisputed that "the Sheriff sold the property subject to all prior liens," and that "any such prior liens passed through and continued to encumber what the Parkers bought." Parkers' Resp. to Mot. Summ J. 4–5, Dkt. No. 105. It is also undisputed that the only prior liens that passed through and continued to encumber the property were those of Virginia National Bank and the United States. Id. at 5; see also United States' Reply Br. 2, Dkt. No. 106 (acknowledging that the Commonwealth of Virginia did not have a perfected lien against the Personal Property at the time it was sold by the Sheriff, and that the ownership interests of Premo and/or the Mayos were extinguished upon the sale). Accordingly, the Parkers' claim to the Personal Property, which they currently own and possess, is third in priority.

IV. **Foreclosure of the Federal Tax Liens**

Section 7403 of the Internal Revenue Code permits the United States to foreclose on its tax liens by seeking a sale of the property to which its liens are attached. 26 U.S.C. § 7403(a). Any

7

property in which a delinquent taxpayer has "any right, title, or interest" is subject to the foreclosure proceedings, including property in which others claim an interest, as long as "[a]ll persons having liens upon or claiming any interest in the property" are joined as parties to the action. Id. § 7403(a), (b). After determining the merits of "all claims to and liens on" the property at issue and finding that "a claim or interest of the United States therein [has been] established," the court "may decree a sale of such property" and "a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." Id. § 7403(c).

The United States has complied with § 7403 by naming as defendants to its cross-claim all parties "having liens upon or claiming any interest in" the Personal Property at issue. Id. § 7403(b). The United States has also established that it has valid tax liens on the Personal Property. Accordingly, the court finds it appropriate to order the foreclosure and sale of the Personal Property as permitted by § 7403(c). Consistent with other cases in this circuit, the court will authorize and direct the Internal Revenue Service's Property Appraisal and Liquidation Specialists ("PALS") to conduct the sale. See, e.g., United States v. Sanchez-Martinez, No. 5:11-cv-00657, 2012 U.S. Dist. LEXIS 69542, at *8 (E.D.N.C. May 18, 2012); United States v. Stanislas, No. 3:07-cv-00393, 2009 U.S. Dist. LEXIS 52774, at *2 (E.D. Va. Mar. 18, 2009); United States v. Whelan, No. 5:06-cv-0388, 2008 U.S. Dist. LEXIS 62334, at *2 (S.D. W. Va. Apr. 22, 2008; United States v. Renuart, No. 05-cv-460, 2006 U.S. Dist. LEXIS 97848, at *1 (M.D.N.C. May 17, 2006).

V. **Distribution of the Proceeds**

The final issue for determination is the proper distribution of the proceeds from the sale of the Personal Property. In accordance with the applicable provisions of the Internal Revenue Code and existing caselaw, the proceeds from the sale of the Personal Property shall be distributed as follows until exhausted: (1) First, to satisfy any allowed costs and expenses of sale, as determined

by subsequent order of this court;[4] (2) Second, to Virginia National until the commercial loan obligations secured by the Personal Property are satisfied; (3) Third, to the United States until the federal tax liabilities subject to the notices of federal tax liens identified in paragraph 13 of the amended cross-claim are satisfied; and (4) Fourth, the balance, if any, to the Parkers.

## Conclusion

For the reasons stated, the court concludes that the United States is entitled to summary judgment on its cross-claim seeking to foreclose on the Personal Property at issue. Accordingly, the court will grant the United States' motion. An appropriate judgment and order of sale will be entered this day.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 27th day of September, 2018.

_____
Senior United States District Judge

---

[4] It is undisputed that the proceeds from the sale of the Personal Property must first be used to cover the expenses of the sale. See, e.g., United States v. Sanchez-Martinez, No. 5:11-cv-00657, 2012 U.S. Dist. LEXIS 69542, at *12 (E.D.N.C. May 18, 2012) (ordering sale proceeds to be used first "for the expenses of the sale, including any expenses incurred to secure or maintain the property pending sale and confirmation by the Court"); United States v. Stanislas, No. 3:07-cv-00393, 2009 U.S. Dist. LEXIS 52774, at * (E.D. Va. Mar. 18, 2009) (same); see also cf. 26 U.S.C. § 6342 (providing that money realized from the sale of property to satisfy a federal tax lien shall be used first to pay the "[e]xpense of levy and sale"). However, the United States and the Parkers seemingly disagree as to whether such expenses include the storage costs incurred by the Parkers during the pendency of this action. The court will rule on this particular issue at the time it becomes necessary to confirm the sale and direct disbursement of the sale proceeds. Prior to doing so, the court will permit the parties to file supplemental briefs on the issue of which expenses are properly considered expenses of the sale.